UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

Case No.  3:20-cv-40

Judge Thomas M. Rose

BECKIE COLVIN,

        Plaintiff,

v.

WAL-MART, INC.

        Defendant.

_____/

## COMPLAINT

Plaintiff BECKIE COLVIN [hereinafter referred to as "Plaintiff"] bring this action against Wal-Mart, Inc., in her individual capacity. Plaintiff alleges, upon her own personal knowledge and/or upon information and belief, the following:

## INTRODUCTION

1. Plaintiff, brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*, against Wal-Mart for its discriminatory practices against them based on her gender as set forth herein.

## JURISDICTION AND VENUE

2. Plaintiff's claim arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ 1331 and 1343(a)(4).

3. Venue is proper in this district pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1391(b) & (c). Plaintiff's claims arose in whole or in part in Ohio and Wal-Mart operates stores and conducts business within this judicial district.

**BACKGROUND - CASE HISTORY**

4. This action springs from *Dukes v. Wal-Mart*, the national class action filed more than ten years ago. In *Dukes*, the United States District Court for the Northern District of California certified a national class of female Wal-Mart and Sam's Club employees challenging Wal-Mart's retail store pay and management promotion policies as discriminatory against women. On June 20, 2011, the United States Supreme Court reversed that class certification order, imposing new guidelines for class actions in Title VII employment discrimination cases (See Factual Background, Procedural Posture, and Wal-Mart Corporate Policies, attached and incorporated herein as Exhibit 1)[1].

**Exhaustion of Remedies**

5. Plaintiff has exhausted her administrative remedies and complied with the statutory prerequisites of Title VII by timely filing charges of discrimination.

6. In particular, Plaintiff has timely filed EEOC charges and Amended EEOC Charges (See Exhibit A,).

7. Plaintiff sets forth sufficient detail as it relates to gender discrimination in her respective changes. (See Exhibit A).

8. Plaintiff has also received her Right to Sue from the Equal Employment Opportunities Commission, and timely filed their action. (See Right to Sue Notice, Exhibit B).

**PARTIES**

9. Plaintiff Beckie Colvin is a female resident of Columbiana County, Ohio. She was employed by Wal-Mart from April 26, 1991, until March 2015, in Store 1707 in East

---

[1] The background information provided and the policies that pre or postdate Plaintiff's employment are provided as background and in support of the discriminatory culture at Wal-Mart.

Liverpool Ohio, which is in Wal-Mart Ohio Region 49.  Ms. Colvin is eligible for rehire.

10. Defendant Wal-Mart Stores, Inc., is a Delaware corporation with stores throughout Ohio.  Its corporate headquarters is located in Bentonville, Arkansas.  In Ohio, Wal-Mart operates retail stores doing business as Wal-Mart Discount Stores, and Wal-Mart Supercenters.

11. Wal-Mart currently operates over 116 Wal-Mart stores and Sam's Clubs in Ohio.

12. Wal-Mart's operations are divided into regions.

13. During the time relevant to the Plaintiff herein, there were a total of 41 regions: 35 Wal-Mart regions and six Sam's Club regions.

14. Plaintiff contends that Wal-Mart maintained a pattern or practice of gender discrimination in either compensation or promotion, or both. While Plaintiff brings her claims individually, the evidence that Wal-Mart engaged in a pattern of discrimination in either compensation or promotion, or both, is relevant evidence that may be used by each individual plaintiff to support her assertion that Wal-Mart's actions with respect to her own pay or promotion or both were driven by gender discrimination. And, in each of the regions the compensation or promotion (or both) policies and practices of Wal-Mart had a disparate impact, not justified by business necessity, on female employees including the Plaintiffs.

## FACTUAL ALLEGATIONS

**Wal-Mart Had Knowledge of Gender Disparities**

15. WAL-MART knew about disparate employment practices, yet Defendant did nothing to rectify these discriminatory practices.

16. Wal-Mart has known for years about the disparity in promotional opportunities for women. Wal-Mart's own internal bench-marking studies concluded that it fell significantly behind other comparable retailers in terms of the representation of women in management.

17. June 2000, a Wal-Mart report concluded "Wal-Mart's women in management per cent (32.4%) is significantly behind several of the other retailers reporting (43.2% to 65.3%)." This was particularly striking because Wal-Mart was drawing these managers largely from an hourly workforce which was 62.6% women, "among the highest" of the companies reporting.

18. Wal-Mart's People Division has annually prepared reports that, for the relevant time periods, also show well documented underrepresentation of women.

19. Wal-Mart's documents show that despite knowledge of disparities, little was done to address the issue. For Wal-Mart, excluding most women from management was the rule, not the exception, as the number worsened over time. Wal-Mart was behind both the Fortune 500 and General Merchandisers in the development of women into Corporate Officers.

20. Wal-Mart has been aware of its gender discrimination problem since at least 1992, if not before, when it started the Women In Leadership program. The organization documented the concerns of the female employees that included complaints that included among other issues that stereotypes limited the opportunities offered to women, and that career decisions are made for associates based on gender.

21. The diversity situation in 2001 worsened and the number of women in management were actually decreasing, rather than improving.

22. Wal-Mart was also aware that women on average were paid less than men holding the same positions. Wal-Mart conducted a Minority/Gender Pay Analysis of retail store management positions, in which it concluded that "average salaries for female and minority males are below the overall average pay for most jobs," and "[a]verage pay increases for minority males and females are generally below overall average income ratio across most jobs."

23. Wal-Mart had long been aware of problems with its hourly compensation system. In 2000, it identified several issues not addressed until 2004 or later:

    - Ineffective pay administration in the field (*e.g.*, pay inequities between associates with comparable service and performance levels);

    - Possible inappropriateness of merit/performance pay approach;

    - Often start rate is based on what the applicant was earning and not on what job he or she will be performing.

24. Wal-Mart discussed its problems in even greater depth in June 2003, presenting the case for considering changes to its hourly pay practices by noting that the then-current system for setting start rates "allows for inequity in pay," that Store Manager ability to over-ride the amount of performance increases "lead[s] to pay inequities," and that merit increases were problematic because "Managers have discretion on amount of merit increase which may led to inequity of pay," and "Manager has discretion on Associates who receive merit increases which may lead to inconsistency of administration." While Wal-Mart considered eliminating merit increases in 2003 because of these concerns, it did not do so then. Instead, Wal-Mart delayed

eliminating this source of inequity until August 2006. The elimination of merit increases was done to increase consistency.

25. Wal-Mart made changes to hourly pay practices in mid-2004, in particular assigning each job to a new job class; many jobs which had previously been in one class were assigned to separate classes depending on department. As the proportion of women in the departments varied greatly, Wal-Mart's reliance on department to set job class ensured that disparities in pay rates by department would correlate with gender. Many jobs in departments in which women were over-represented were assigned to lower job classes, while those same job titles in departments over-represented by men were assigned to higher job classes. This differentiation in job class (and thus potential pay) was made by department even though the Hay Group, whose work Wal-Mart relied upon, found that there was a "high degree of consistency in the primary role of Sales Associate job across departments."

26. When Wal-Mart made those changes, it also applied a "neutralization adjustment" that was designed to reduce the statistically significant differences for male and female employees, though only if within the same, newly-assigned job class, by giving larger increases to women.

### ALLEGATIONS OF PLAINTIFF

**Plaintiff Beckie Colvin**

27. Plaintiff Beckie Colvin began her employment with Wal-Mart on April 26, 1991, in Store #1707 in East Liverpool, Ohio.

28. During employment, and on or about approximately December 15, 2003, Ms. Colvin became the Department Manager in the Housewares Department in East Liverpool, Store #1707, receiving a $.50/hr. raise to $11.93/hr.

29. A male in the Lawn & Garden Dept., Brian Stewart, became a Department Manager in that department in about 2000. At the time that Ms. Colvin became Department Manager in Housewares, she was making $11.93/hour. At that time, Mr. Stewart, as Department Manager in Lawn & Garden, was making $13.43/hour, despite starting into the position at the same time.

30. In approximately 2005, Wal-Mart assigned its employees to Pay Levels. Electronics Dept. Managers (where Ms. Colvin had been since 2004) and Lawn and Garden Dept. Managers were both considered a Pay Level 7.

31. In 2007, Ms. Colvin was making $13.43/hr. as the Department Manager of Electronics (she became Department Manager of that department in March, 2004) – the hourly rate that Mr. Stewart was making four (4) years earlier. Mr. Stewart told Ms. Colvin that when they were assigned to pay levels, he was "capped out," meaning that his rate of pay at that time (in 2007) was at least $19.53/hour, which is the top of the Pay Level 7 chart and that he would not get any pay increase every year on his anniversary with the company. Instead, because he was capped out, he only received a cost of living pay raise. So in 2007, Mr. Stewart was already earning at least $4.10/hour more than Ms. Colvin was.

32. In November, 2011, Ms. Colvin became Manager and then the Department Manager of eight (8) departments (5, 55, 58, 72, 87, 06, 85, & 86). Mr. Stewart only had four (4) departments that he managed (16, 56, 66 & 18). Department 18 is seasonal, so Mr.

Stewart only has that area three (3) times a year: at Easter, summer, and Christmas time; the rest of the time Mr. Stewart is only running three (3) areas. Ms. Colvin did not receive any pay raise when she received this promotion; and neither did the woman who became the Technology Supervisor of the Toy Department, but other male department managers had higher hourly rates than other women and Ms. Colvin, notwithstanding my greater tenure and experience.

33. Wal-Mart increased the pay cap in August, 2012 for Pay Level 7 managers to $20.37/hr. Brian Stewart remained capped out, but Ms. Colvin was at $17.93/hour. With her raises always being limited to $.40/hour per year, it will take her six (6) more years to reach the amount paid to Brian Stewart. Mr. Stewart, however, typically receives yearly raises of $.50/hr.

34. Ms. Colvin learned males were also given special benefits denied to her and other women. For example, Mr. Brian Stewart received management permission to work every Sunday, which is paid at time and a half. Only very rarely is another Department Manager, like Ms. Colvin, permitted to work on a Sunday.

35. During Christmas season, employees were asked to work on the weekends. Ms. Colvin asked to be scheduled to work Sundays for increase in pay, but never was scheduled to work any Sundays, only Saturdays which did not get paid overtime.

36. Upon information and belief, Ms. Colvin believes she was paid less than other similarly situated men during her employment within Ohio Wal-Mart Region.

## STATEMENT OF CLAIMS

## COUNT I—VIOLATION OF TITLE VII
## DISPARATE TREATMENT ON THE BASIS OF PAY IN WAL-MART

37. Plaintiff incorporates and realleges paragraphs 1 through 36 herein.

38. Wal-Mart denied Plaintiff pay and benefits equal to that earned by similarly situated men, on the basis of gender.

39. Wal-Mart's conduct of engaging in discrimination against its female employees working in Ohio Wal-Mart Region by making compensation decisions on the basis of gender violates Title VII of the Civil Rights Act of 1964.

40. The Defendant has failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring.

41. Wal-Mart's discriminatory practices described above have denied Plaintiff compensation to which she is entitled, in violation of Title VII.

42. Wal-Mart's alleged reasons, if any, for the discrimination against Plaintiff on the basis of gender is a mere pretext, as evidenced by the pattern or practice of discrimination against female employees generally.

43. Plaintiff has each exhausted all of their administrative remedies prior to bringing this action. (Exhibits A and B).

44. As a result of Wal-Mart's violations, the Plaintiff has suffered damages.

45. As a direct and proximate result of the Defendant's willful knowing and intentional discrimination, Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe emotional distress, loss of skills, and mental anguish; Plaintiff has incurred other incidental expenses; Plaintiff has suffered related to the harm caused by Wal-Mart's violations.

46. Plaintiff has and will continue to suffer a loss of earnings and other employment-related benefits and job opportunities.

47. Plaintiff seeks an award of general and compensatory damages, reinstatement or front pay, back pay, and prejudgment interest.

48. In addition, Plaintiff is entitled to punitive damages for the Defendant's malice and/or reckless disregard of Plaintiff's federally protected rights.

49. As a further direct and proximate result of the Defendant's violation, Plaintiff has been compelled to retain the services of the undersigned firms. Plaintiff will incur and continue to incur reasonable attorney's fees and costs. Plaintiff requests that her attorney's fees be awarded pursuant to Title VII.

50. Plaintiff, therefore, requests relief as provided in the Prayer for Relief below.

### COUNT II—VIOLATION OF TITLE VII
### DISPARATE IMPACT ON THE BASIS OF PAY

51. Plaintiff incorporates and realleges paragraphs 1 through 36 herein.

52. Wal-Mart has maintained a system for making decisions about compensation and benefits that has had an adverse impact on its female employees in Ohio Wal-Mart Region, including the Plaintiff. Its compensation policies for setting and adjusting pay collectively and individually, including its failure to require or use job related criteria for making compensation decisions, its policy of setting pay adjustments based on the associate's prior pay, and its 2004 pay class restructuring, have had an adverse impact on women, subject to if and when those policies were in place during their specific time of employment.

53. In Ohio Wal-Mart Region, Wal-Mart has failed to create or maintain the data that would allow analysis of the impact of each of these policies and practices individually. Nor does Wal-Mart specify the weight that should be accorded to each of its requirements for pay. Wal-Mart's pay policies and procedures are, thus, not capable of separation for

analysis, and accordingly the entire decision-making process for compensation decisions may each be analyzed as one employment practice. 42 U.S.C. 2000e-2(k)(1)(B)(i).

54. Wal-Mart's compensation policies are not job related or consistent with business necessity. Wal-Mart's own consultants and human resources staff proposed adoption of more consistent and reliable scheduling. Adopting this policy would have resulted in less discriminatory impact upon female employees, including the Plaintiff while serving Wal-Mart's business needs more effectively than its current practices.

55. Wal-Mart's discriminatory practices described above have denied female employees compensation to which they are entitled, which has resulted in the loss of past and future wages and other job benefits.

56. As a result of Wal-Mart's violations, the Plaintiff has suffered damages.

57. Plaintiff has and will continue to suffer a loss of earnings and other employment-related benefits and job opportunities.

58. Plaintiff seeks an award of economic damages, reinstatement or front pay, back pay, and prejudgment interest.

59. As a further direct and proximate result of the Defendant's violation, Plaintiff has been compelled to retain the services of the undersigned firms Plaintiff will incur and continue to incur reasonable attorney's fees and costs. Plaintiff requests that her attorney's fees be awarded pursuant to Title VII.

60. Plaintiff, therefore, requests relief as provided in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff pray for relief as follows:

a. A declaratory judgment that the practices complained of in this Complaint are unlawful and violate 42 U.S.C. § 2000(e), et. seq., Title VII of the Civil Rights Act of 1964;

b. General and compensatory damages;

c. Reinstatement or front pay;

d. Back pay;

e. Punitive damages;

f. Costs incurred, including reasonable attorneys' fees, to the extent allowable by law;

g. Pre-Judgment and Post-Judgment interest, as provided by law; and

h. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues, claims, actions, and defenses in this case.

Dated this 30th date of January 2020.

Respectfully submitted,

> s/ Lindsey Wagner
> Lindsey Wagner, Esq., Trial Attorney
> Ohio Supreme Court Registration #98215
> Cathleen Scott, Esq.
> *Admitted pro hac vice*
> Florida Bar No.: 135331
> Cscott@scottwagnerlaw.com
> Lindsey Wagner, Esq.
> lwagner@scottwagnerlaw.com
> **Scott Wagner and Associates, P.A.**
> **Main Office (Primary Mailing Address):**
>   Jupiter Gardens
>   250 South Central Boulevard, Suite 104
>   Jupiter, FL 33458
>   Telephone: (561) 653-0008

       Facsimile: (561) 653-0020
**Ohio:**
  6605 Longshore Street
  Suite 240 #155
  Dublin, Ohio 43017

## CERTIFICATE OF SERVICE

    I hereby certify that, on this 30th day of January 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

                s/ Lindsey Wagner

### SERVICE LIST
### Case No. 3:19-cv-00155-TMR

Alison M. Day, *Trial Attorney* (#0068060)
LITTLER MENDELSON, P.C.
21 East State Street, 16th Floor
Columbus, OH 43215
Telephone: 614.463.4212
Facsimile: 614.573.7984
E-mail: aday@littler.com

Scott A. Forman (FL#0065950)
Littler Mendelson, P.C.
7333 SE 2nd Avenue, Suite 2700
Miami, Florida 33131
Telephone: 305.400.7511
Facsimile: 305.6032552
Email: sforman@littler.com